# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL ACTION NO. 1:25-CV-00249-KDB

| | |
|---|---|
| **BRITTANY BYRD PHILLIPS,**<br><br>**Plaintiff,**<br><br>v.<br><br>**FRANK BISIGNANO,**<br>**COMMISSIONER OF SOCIAL**<br>**SECURITY,**<br><br>**Defendant.** | **<u>MEMORANDUM AND</u>**<br>**<u>ORDER</u>** |

**THIS MATTER** is before the Court on Plaintiff Brittany Byrd Phillips' appeal of an unfavorable administrative decision denying her application for disability insurance benefits under the Social Security Act. (Doc. No. 6). Having reviewed and considered the parties' briefs, the administrative record, and the applicable authority, the Court finds the Defendant Commissioner's decision to deny Plaintiff Social Security benefits is supported by substantial evidence and uses the correct legal standards. Accordingly, the Commissioner's decision will be **AFFIRMED**.

## I.      PROCEDURAL BACKGROUND

On June 7, 2022, Phillips applied for disability insurance benefits under Title II of the Social Security Act, alleging that she had been disabled since May 1, 2019. Administrative Record ("AR") at 22. Her claim was denied initially and upon reconsideration. *Id.* Phillips then requested a hearing before an Administrative Law Judge ("ALJ"), where she was represented by an attorney. *Id.* After conducting the hearing, ALJ Benjamin Burton denied Phillips' application in a decision dated June 18, 2024. *Id.* at 32. Phillips sought review by the Appeals Council, which was denied

1

on June 13, 2025. *Id.* at 5–7. The ALJ's determination therefore stands as the final decision of the Commissioner. Phillips now timely seeks judicial review under 42 U.S.C. § 405(g).

## II.    THE COMMISSIONER'S DECISION

The ALJ used the required five-step sequential evaluation process established by the Social Security Administration ("SSA") to determine whether Phillips was disabled during the relevant period.[1] At step one, the ALJ found that Phillips was not currently engaged in substantial gainful activity and had not done so from the alleged onset date of September 30, 2021, through the date of his decision.[2] *Id.* at 18. At step two, the ALJ found that Phillips had the following severe impairments: "diabetes mellitus; anxiety and obsessive-compulsive disorders; obesity; other disorders of the nervous system; other disorders of the gastrointestinal system; osteoarthrosis and allied disorders (20 [C.F.R. §] 404.1520(c))." *Id.* At step three, the ALJ found that none of Phillips' impairments, nor any combination thereof, met, or equaled one of the conditions in the Listing of Impairments at "20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525 and 404.1526)." *Id.* at 19.

Before proceeding to step four, the ALJ found that Phillips had the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can understand and follow simple instructions and directions;

---

[1] The ALJ must determine under the five-step sequential evaluation: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite the claimant's limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

[2] Phillips' Date Last Insured ("DLI") was December 31, 2021. AR at 32.

perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with all others to the extent necessary to carry out simple tasks; can handle simple, repetitive work-related stress in that the claimant can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require the claimant to supervise or manage the work of others. The claimant can never have public interaction but can maintain occasional interaction with supervisors and coworkers.

*Id.* at 26–27.

At step four, the ALJ found that Phillips was unable to perform her past relevant work as a nursing assistant. *Id.* at 30. Finally, at step five, the ALJ concluded that there were other jobs in significant numbers in the national economy that Phillips could perform based on her age, education, work experience, and RFC. *Id.* at 31. These jobs included meat clerk, warehouse worker, and laundry worker. *Id.* Thus, the ALJ found that Phillips was not disabled under the Social Security Act from May 1, 2019, through December 31, 2021, the date last insured. *Id.* at 32.

### III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604–05 (4th Cir. 2025); *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020).

The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'

*Biestek v. Berryhill*, 587 U.S. 97, 98–99 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations."

3

*Id.* at 102 (citation modified). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[3] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (citation modified). Accordingly, this Court does not review a final decision of the Commissioner *de novo, Metcalf v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Drumgold*, 144 F.4th at 604; *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation modified). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the

---

[3] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not." *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction "is so narrow that it is often very difficult for a court to decide upon which side of the line evidence falls"). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that "scintilla is Latin for 'whatever a judge wants it to mean.' ... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

4

court defers to the ALJ's decision. *Id*. (citation modified); *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, the Court must always ensure that proper legal standards are being followed. *Long v. Kijakazi,* No. 1:22-CV-00091-KDB, 2022 WL 18026331, at *2–3 (W.D.N.C. Dec. 30, 2022).

### IV.    DISCUSSION

Phillips urges the Court to reverse the ALJ's finding of no disability or remand her case, contending that the ALJ erred by (1) failing to provide "an accurate and logical bridge between the evidence … and his conclusion" that Phillips' "testified limitations" were not supported, and (2) in not obtaining "any consultative examinations." Doc. No. 6 at 9–10.

Phillips first alleges that the ALJ erred by failing to provide the necessary logical bridge between the evidence and his conclusion that Phillips remained capable of some work because her testimony as to the severity of her symptoms was "uncontradicted." Doc. No. 6 at 14. This is not so. The ALJ's opinion, which discusses her subjectively reported symptoms in detail, also explains that her "statements about the intensity, persistence, and limiting effects" of her symptoms are "inconsistent with [her] typical clinical presentations, her reported activities during the relevant period,[4] and the record as a whole." AR at 28.

To be sure, at least a portion of that statement appears to be boilerplate. But the ALJ did not simply quote boilerplate without explanation. He supported the statement by explaining that

---

[4] Phillips' medical records show some complaints of increased anxiety, including more frequent panic attacks and worsening difficulty leaving her house in 2022, after the date last insured. *See, e.g.,* AR at 515, 520, 608.

although Phillips alleges to be unable to leave her home, she attended some in-person medical visits during the relevant period.[5] *Id.* at 29. In 2020, Phillips reported that she was able to travel from her hometown of Bakersville to "SP," but she could no longer travel as far as Pigeon Forge.[6] *Id.* at 351. And, in 2021, Phillips asked for "as needed" medication for when she went to the grocery store. *Id.* at 29. At many visits, Phillips was alert, oriented, in no distress, and exhibited a normal mood and affect. AR at 29. Although Phillips intermittently reported worsening anxiety and panic attacks at times, the ALJ noted that Phillips was not entirely compliant with taking her medications on several occasions (including stopping medications because of side effects, not starting prescribed medications, and taking a medication prescribed to someone else) and she reported being satisfied with her psychiatric medication regimen and counseling visits and that her anxiety had improved on other occasions. AR at 27–30. Phillips also reported a lack of motivation and energy and had "brain fog," although she also reported being able to perform household chores, pay bills, and manage a bank account. AR at 29–30.

Accordingly, the Court finds that the ALJ both credited Phillips' subjectively reported symptoms insofar as they aligned with the record evidence and sufficiently explained his reasons for determining that they were not always consistent with that evidence. The Court is therefore

---

[5] Many of the visits Phillips attended via Telehealth were conducted during the height of the COVID-19 pandemic and contained the following disclaimer: "Tele-health performed with provider and/or patient located remote from office to avoid patient, staff, and provider's risk of exposure to communicable disease during national emergency due to COVID-19 pandemic." *See, e.g.,* AR at 551.

[6] The ALJ cited this portion of the record to note that Phillips' husband reported that they no longer travel due to her anxiety. However, the record reflects that she was still able to leave the home. Specifically, the record states: "[Phillips] says that her anxiety has somewhat improved but she is still not going places. [S]he lives in [B]akersville and the furthest she goes i[s] SP. [H]er husband, who is with her, says that they used to go to Johnson [C]ity and [P]igeon [F]orge all the time and they no longer go now because of her anxiety." AR at 351.

6

satisfied that the ALJ built "an accurate and logical bridge from the evidence to [his] conclusion," *Shinaberry,* 952 F.3d at 123, that Phillips' testimony was not fully credible.

Next, Phillips contends that the ALJ erred in not ordering a psychological consultative examination after Phillips' endocrinologist—who Phillips saw one-time for a consultation relating to her thyroid disease—recommended her primary care provider refer her to a psychologist for medication management after she reported a side effect to "antidepressants." AR at 660.

The Fourth Circuit recognizes that "an ALJ has a duty to investigate the facts and develop the record independent of the claimant or his counsel." *Marvin F. v. Kijakazi*, No. 9:22-CV-03019-JD-MHC, 2023 WL 5056950, at *10 (D.S.C. June 12, 2023), *report and recommendation adopted,* No. 9:22-CV-03019-JD-MHC, 2023 WL 5041324 (D.S.C. Aug. 7, 2023) (quoting *Pearson,* 810 F.3d at 210). This duty to develop the record is triggered when the record is inconsistent, ambiguous, or otherwise insufficient to allow the ALJ to make a "proper determination" as to a claim. *Id.* (citing 20 C.F.R. §§ 404.1519a, 416.919a (noting consultative examinations may be ordered when the record evidence is insufficient to support a determination on a claim)) (additional citations omitted). Still, the ALJ is not required to "function as the claimant's substitute counsel," nor does the duty require supplementation of an otherwise adequate record to cure deficiencies in a claimant's presentation.[7] *Lehman v. Astrue*, 931 F. Supp. 2d 682, 693 (D. Md. 2013) (first quoting *Bell v. Chater*, 57 F.3d 1065 (Table) (4th Cir. 1995); and then citing *Rice v. Chater*, 53 F.3d 329 (Table) (4th Cir. 1995)). *See also* 20 C.F.R. § 416.920b (when the medical evidence is consistent but insufficient to determine disability status, the ALJ "*may* ask you to undergo a consultative examination at our expense ….") (emphasis added).

---

[7] Indeed, Phillips bears the burden of proof through step four and must produce evidence supporting her application and demonstrating disability. *See* 20 C.F.R. §§ 404.1512, 416.912.

7

Nevertheless, "it is reversible error for an ALJ not to order a consultative examination when such evaluation is necessary for him to make an informed decision." *Huddleston v. Astrue*, 826 F. Supp. 2d 942, 959 (S.D.W. Va. 2011) (additional citations omitted). Thus, the key issue before the Court is whether the record contained "sufficient medical evidence for the ALJ to make an informed decision" concerning Phillips' case. *Marvin F. v. Kijakazi,* 2023 WL 5056950, at *11 (citing *Lehman*, 931 F. Supp. 2d at 692) (additional citation omitted).

Here, there was no need for the ALJ to further develop the record by ordering a consultative psychology examination. As an initial matter, the recommendation was made by a provider who was consulting with Phillips only for her thyroid disease and would not be following Phillips' medical care. AR at 660. And, it was made for the purpose of ensuring that Phillips had expert psychiatric medication management, as she reported side effects to "antidepressants." *Id.* There is no indication that the recommendation was in any way related to determining whether or not Phillips was disabled as defined by the SSA.

Indeed, Phillips provided a robust medical record, which detailed her psychiatric and other symptoms over time. In addition, the two psychological consultants, who the ALJ found persuasive, reviewed Phillips' medical records and each opined that Phillips remained able to work with limitations. *See* AR at 30, 68, 81. The ALJ considered all of this, along with Phillips' subjectively reported symptoms when he crafted the RFC and determined that Phillips was not disabled.

Thus, as in *Drumgold v. Comm'r of Soc. Sec.,* 144 F.4th 596 (4th Cir. 2025) the record contained conflicting evidence that the ALJ properly resolved, and it is beyond the permissible role of this Court to reweigh the evidence or substitute its judgment for the ALJ's. *See Drumgold,* 144 F.4th at 605 (holding that because the ALJ is the trier of fact, the duty to resolve conflicting

8

medical evidence lies with the ALJ and explaining that when the ALJ "does that by applying the correct factors, we won't Monday-morning-quarterback the decision unless it is exceptionally clear that the ALJ made a mistake."). Moreover, the ALJ offered a "sufficient rationale in crediting certain evidence and discrediting other evidence," *id.* (quoting *Shelley C. v. Comm'r of Soc. Sec. Admin.,* 61 F4th 341, 353 (4th Cir. 2023)), to formulate an RFC supported by substantial evidence. Therefore, Phillips' appeal will be denied and the Commissioner's decision will be affirmed.

## V.     ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's appeal (Doc. No. 6) is **DENIED,** and the Commissioner's decision is **AFFIRMED**; and

2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.
Signed: June 8, 2026

Kenneth D. Bell
United States District Judge

9